UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORRI M. DURDEN,

           Plaintiff,           Civil Action No. 20-12974

v.                                        George Caram Steeh
                                        United States District Judge
SARAH,

                                        David R. Grand
           Defendants.      United States Magistrate Judge
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 22)**

*Pro se* plaintiff Torri M. Durden ("Durden"), an incarcerated person, brings this civil rights action pursuant to 42 U.S.C. § 1983 against defendant Sarah Sheehan, E.M.T. ("Sheehan"), alleging an Eighth Amendment claim of deliberate indifference to a medical injury he allegedly suffered during his time at the Oakland County Jail. The case was referred to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636(b). (ECF No. 16).

Presently before the Court is Sheehan's motion for summary judgment (ECF No. 22), to which Durden filed a response (ECF No. 24) and Sheehan filed a reply (ECF No. 26).

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that defendant Sheehan's Motion for Summary Judgment **(ECF No. 22)** be **GRANTED.**

## II.  REPORT

### A.  Background

Durden is currently a Michigan Department of Correction's ("MDOC") prisoner who is confined at the St. Louis Correctional Facility in St. Louis, MI. He brings this § 1983 civil rights action, alleging that his Eighth Amendment rights were violated when Sheehan was deliberately indifferent to a medical injury he allegedly suffered during an incident at the Oakland County Jail ("OCJ"), where he was housed at the time of the events at issue in his complaint.

On November 10, 2020, the Honorable George Caram Steeh screened the complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), summarizing the allegations in Durden's complaint and summarily dismissing his claims against all defendants except for Sheehan, as follows:

> [Durden] asserts that he was an inmate at the Oakland County Jail on February 22, 2020. On that date, he asserts that he was removed from his cell by an extraction team and placed in a restraint chair. During the extraction, [Durden] asserts that he was assaulted by the team and he injured his knee and ankle. He asserts that his knee became swollen and turned purple, and he experienced intense pain. [Durden] requested to be seen at the medical unit. He asserts that Defendant Nurse Sarah [Sheehan] said that she would schedule him for an x-ray, but it was never done. He also asserts that she did not examine or assess his injury, nor did she give him any medications for his pain.
>
> * * * * * * *
>
> [Durden] claims a violation of his right to constitutionally adequate medical care under the Eighth and Fourteenth Amendments. . . . Here, reading [Durden's] pro se pleading indulgently, *Haines*, 404 U.S. at 520, [Durden] has adequately pled facts in support of the objective component of a deliberate-indifference claim. He claims that he suffered a serious injury to his knee and ankle while at the Oakland

2

> County Jail. He asserts that his knee turned purple and was swollen, and that he continues to experience pain as a result of the injury. With respect to the subject[ive] component of the claim, again reading the complaint indulgently, [Durden] has adequately pled facts asserting that Defendant [Sheehan], the person charged with treating him following the injury, refused to examine or treat him. [Durden] asserts that [Sheehan] informed him that she would schedule an x-ray, but it was never performed. He further alleges that she never examined his injury and refused to provide him with pain medication. For purpose[s] of screening the complaint, [Durden] has stated a deliberate-indifference claim against Defendant [Sheehan].

(ECF No. 5, PageID.39-42).

This case has since proceeded through a full discovery period, which was completed on November 30, 2021. (ECF No. 17). On January 14, 2022, defendant Sheehan filed her motion for summary judgment, Durden filed a response, and Sheehan filed a reply. (ECF Nos. 22, 24, 26). As discussed below, the record evidence developed by the parties on summary judgment reveals the details surrounding the incident in question.

Sometime around 5:00 p.m. on February 22, 2020, Durden went to the "Clinic Room" for complaints of "Chest Pain" from "working out" and doing "push ups." (ECF No. 22-1, PageID.105-06 (OCJ medical treatment note); ECF No. 22-4, PageID.115 (Sheehan's affidavit)). Sheehan examined Durden for complaints that his "left pec hurts and [that] when he takes a deep breath he has sharp pain," and she administered a "one time dose of Motrin 600 mg." (*Id.*).

Later that same day, between the hours of approximately 9:30 p.m. on February 22, 2020, and 2:00 a.m. on February 23, 2020, Durden was involved in a series of events that resulted him being extracted from his cell and placed in a restraining chair. OCJ Prison Inmate Notes and a Prisoner Incident Report for Durden describe those events as follows:

3

> Cell Extraction Team members . . . assembled outside [unit] A3. Upon arrival to cell A304, Inmate Durden was behind a blanket that was strung up in his cell and his mattress. Inmate Durden had also tied ripped pieces of sheet around his cell door and the cell bars. Inmate Durden was given several loud verbal commands to come out from behind the blanket, to which he did not comply. Deputy Wurfel deployed inert rounds from the pepperball launcher in an attempt to gain compliance, which was ineffective. Inmate Durden had thrown an unknown liquid at deputies multiple times. Deputies made entry into the cell and assisted Inmate Durden out from under his bunk and secured him into handcuffs. ***It was determined that Inmate Durden would be placed into the restraint chair for safety and security. Inmate Durden was ordered and assisted to his feet and escorted to the restraint chair placed in the hallway. Inmate Durden was then placed into the restraint chair.*** Inmate Durden was escorted via restraint chair to cell J-9 for temporary housing. Once in cell J-9, the restraint chair was secured to the bench. At approximately 2115 hours, all deputies exited the cell and the cell door was secured.
>
> ***Nurse Hooks medically evaluated Inmate Durden. Per Nurse Hooks, Inmate Durden was cleared of any injury.*** At approximately 2200 hours deputies re-entered cell J-9 to adjust the shoulder straps on the restraint chair and re-apply a spit hood due to Inmate Durden removing the original spit hood. ***EMT Sheehan medically evaluated Inmate Durden. Per EMT Sheehan, Inmate Durden was cleared of any injury.*** Sergeant Jordan was present at the time of the incident. A DVD copy of the video footage captured by the handheld camera was prepared by Deputy Landeros and was placed into locker #33 in the property room under tag #144604 for safekeeping. Event entered into IMACS.

(ECF No. 22-1, PageID.104; ECF No. 22-3, PageID.111-13) (emphasis added).

As to his claims against Sheehan, Durden avers in his complaint that, between the time he was extracted from his cell and placed in a restraining chair, he suffered an "injury" to his left ankle and knee, and that Sheehan failed to provide him with medical care. (ECF No. 1, PageID.7). But, as explained below, summary judgment involves an evidentiary burden-shifting framework, and whereas defendant Sheehan has come forward with

4

evidence to meet her burden as to Durden's allegations, Durden failed to meet his evidentiary burden. Indeed, the record evidence developed at the summary judgment stage paints a picture wholly different than Durden's unsupported allegations.

Specifically, an OCJ "Therapeutic Restraint Flowsheet" reflects that, after being placed in the restraining chair, Durden was first checked on by Nurse Hooks at 10:02 p.m., followed by a total of *seven times by Sheehan* at 10:20 p.m., 10:50 p.m., 11:20 p.m., 12:00 a.m., 12:30 a.m., 1:00 a.m., 1:30 a.m., and 2:00 a.m. (ECF No. 22-2, PageID.109). During each of these checkups, both Sheehan and Nurse Hooks examined Durden's "Extremity restraints [] x 4," "Extremity pulses [] x 4," "Chest restraint []," and noted that Durden had "ROM [range of motion] to all extremities" and was "Cooperative." (*Id.*). After Sheehan's last assessment at 2:00 a.m., Durden was subsequently "evaluated by E.M.T. Jarema for a therapeutic chair removal clearance." (ECF No. 22-4, PageID.116-17). Jarema's medical progress note at 2:41 a.m. states that Durden "has gone four hours in the therapeutic restraint chair without issue, moved to K8 for continued monitoring. [Durden] states his left ankle is broken and he cannot stand. [Durden] however is moved from the chair and shows the ability to place weight on the left ankle. While CET has [Durden] restrained [Durden's] ankle is examined, no signs of swelling/deformity noted, PMS [(pulse, motor, sensation)] positive." (ECF No. 22-2, PageID.107). Jarema also observed that Durden had "an uneven gait due to refusing to stand," but assessed there were "no signs of trauma/injury." (*Id.*). Based on her exam, Jarema "cleared" Durden "of injury," informed him of "sick call protocol," instructed him to "inform deputies if an emergency occurs," and documented that Durden "verbalized understanding ... [and] has no further medical

5

needs or complaints at this time." (*Id.*, PageID.108).

As for Sheehan's specific role in this incident, Sheehan provides an affidavit further detailing her personal involvement in medically evaluating Durden. (ECF No. 22-4). Sheehan attests that "[a]t each stated time[,] [she] checked and assessed all of [Durden's] extremities (including both of his wrists and both ankles), extremity pulses, chest restraints, respiration rate, and range of motion of all of his extremities (including both wrists and both ankles)," that she specifically "examin[ed] [Durden's] ankles, moving them around in a circle, and checking his pedal pulses and sensation," and that "[a]ll of [her] assessments of [Durden] were normal and his extremities, including his left ankle, functioned properly at the time of [her] assessments and he had no knee injury." (*Id.*, PageID.115-16). She was also "never involved in [Durden's] care after 2:00 a.m. on February 23, 2020," and "[u]sing [her] medical judgment, [she] noted no injuries during [her] assessments," as documented in the medical records. (*Id.*, PageID.116, 118). Finally, she "did not tell [Durden] that [she] was setting up an x-ray," which was "not within [her] power" to do, nor did she "ever tell [him] that [she] cannot do anything for him while he is restrained," given that she "did assess him and found no injuries at the time that [she] saw him." (*Id.*, PageID.118-19).

A few days later, on February 27, 2020, Durden was apparently transported to MDOC custody. (*See* ECF No. 1, PageID.7). On that same date, Durden was seen by a MDOC Nurse Practitioner, Ronald Drinkert, for complaints of "joint pain" in the "[p]osterior/popliteal left knee and medial left ankle" as a result of his "injury on 2/22/2020 via high-energy impact and pressure to joints while [he was] laying prone." (*Id.*,

PageID.17). MDOC records reflect that Durden reported "burning" pain to his knee at "6 of 10" that is "worsened with downward/axial pressure," such as "descending stairs," and "sharp pain" in his left ankle that "occurs w/ inversion of joint." (*Id.*). Durden was "agreeable to radiologic studies, ambulatory support w/ a cane, and as needed ibuprofen and acetaminophen," but "[d]eclined offer of ice/cold therapy." (*Id.*). A physical exam indicated that Durden had a "visible injury" as "demonstrated during ambulation w/ limp and favoring of LLE," and he was assessed with "Pain in left ankle and joints of left foot," as well as "Pain in left knee." (*Id.*, PageID.19).

On March 3, 2020, Durden ultimately received x-rays of his left ankle and knee at the MDOC. (*Id.*, PageID.16). A MDOC Radiology Report revealed that, as to his left ankle, "[t]here is evidence of orthopedic surgery with two orthopedic screws at the medial malleolus. Old heal trauma is present.[1] The ankle joint articulating surface is maintained. There are no acute displaced fractures or any other acute osseous abnormalities. No abnormal soft tissue densities are seen." (*Id.*). Based on these findings, Durden was assessed with "[o]ld healed trauma of the medial malleolus with surgical intervention" and "[n]o acute osseous changes are present" in his left ankle. (*Id.*). As to his left knee, x-rays indicated that "[m]ild prepatellar and suprapatellar soft tissue swelling is present. There are no acute displaced fractures or any other acute osseous abnormalities. No abnormal soft tissue densities are seen. The patellofemoral and knee joint articulating surfaces were

---

[1] MDOC clinical records dated February 27, 2020, note Durden's prior history concerning his left ankle, including "[left] [a]nkle w/ previous injury 2/2 MVA [motor vehicle accident] and required surgical intervention w/ 'plates and screws.'" (ECF No. 1, PageID.17).

otherwise unremarkable." (*Id.*). Based on these findings, Durden was assessed with "[m]ild prepatellar and suprapatellar soft tissue swelling" in his left knee. (*Id.*).

Sheehan now moves for summary judgment on Durden's claims against her, arguing that there is no genuine dispute of material fact that Durden failed to sufficiently demonstrate that she violated his Eighth Amendment rights.

### B. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,*

256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C. Analysis

In her motion, defendant Sheehan seeks summary judgment on Durden's claim against her, arguing that the record evidence demonstrates there is no genuine dispute of material fact that Durden failed to show an objectively serious medical need, nor that Sheehan was subjectively aware of such need and consciously disregarded it. (ECF No. 22, PageID.94-101). To establish an Eighth Amendment claim for deliberate indifference, Durden must satisfy "both an objective and a subjective component." *Broyles v. Correctional Medical Servs., Inc.*, 478 F. App'x. 971, 975 (6th Cir. 2012). Specifically, he must show that he had a serious medical need (the objective prong) and that the defendant, being aware of that need, acted with deliberate indifference to it (the subjective prong). *See Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010). For the reasons discussed below, even viewing the record in the light most favorable to Durden as the non-moving party, he falls well short of satisfying the objective and subjective components of his Eighth Amendments claims based on Sheehan's failure to administer additional pain medication or order an x-ray of his left ankle and/or knee.

First, as to the objective component, the Sixth Circuit has explained that:

9

> To prove [an] objectively serious harm in the health context, prisoners must first establish that they have "serious medical needs." They can do so, for example, by showing that a doctor has diagnosed a condition as requiring treatment or that the prisoner has an obvious problem that any layperson would agree necessitates care. ***A serious medical need alone can satisfy this objective element if doctors effectively provide no care for it. More frequently, doctors provide some care and prisoners challenge their treatment choices as inadequate. To establish the objective element in this common situation, prisoners must show more. Objectively speaking, this care qualifies as "cruel and unusual" only if it is "so grossly incompetent" or so grossly "inadequate" as to "shock the conscience" or "be intolerable to fundamental fairness."***

*Phillips v. Tangilag*, 14 F.4th 524, 534-36 (6th Cir. 2021).

Notably, in *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996), the Sixth Circuit was faced with a similar claim and held that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment, and at most ... it is medical malpractice." *Durham*, 97 F.3d at 868. As the *Durham* court explained:

> In the case of *Estelle v. Gamble,* 429 U.S. 97, 97 [] (1976), the Supreme Court established the standard for determining whether the facts alleged in a prisoner's complaint for improper medical care constitute a valid civil rights claim. In *Estelle,* the Court held "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106 []. The *Estelle* Court also held that "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind,'" *id.* at 105–6 [], and that negligence or "medical malpractice" alone is insufficient to establish liability.
>
> ***Especially relevant to this case, which involves the failure to order an X-ray of plaintiff's arm to enable the physicians to diagnose his broken arm, is the language from Estelle that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment," and "at most ... it is medical malpractice."*** *Id.* at 107 [].

10

\* \* \* \* \* \* \* \*

> ... While Durham's broken arm was clearly a "serious medical need," it was not readily apparent that the arm was broken, and he did receive medical attention after the incident. He received sutures for the cut above his eye, and ***an examination was done of his arm. The broken arm was not displaying any swelling, and so it was not unreasonable or wanton for the two physicians to fail to diagnose that it was broken until several days later.***

*Durham*, 97 F.3d at 868-69 (emphasis added). Accordingly, the Sixth Circuit affirmed the lower court's finding that the plaintiff failed to raise a "genuine issue of material fact as to the objective component of the standard for deliberate indifference." *Id.* at 869 ("While his injury was undeniably serious, it was not obvious. The physicians may have been negligent in failing to diagnose and treat plaintiff's arm in a timely manner, but medical negligence does not rise to the level of a constitution tort.").

Here, the record evidence makes clear that Durden's deliberate indifference claim is far weaker than that of the plaintiff in *Durham*, who suffered an ***actual broken arm*** but nonetheless could establish no more than potential medical malpractice based on a "medical decision not to ***order an X-ray, or like measures***[.]" *Durham*, 97 F.3d at 869 (emphasis added). In stark contrast to *Durham*, Durden's x-ray revealed he had only "***[m]ild*** prepatellar and suprapatellar soft tissue swelling" in his left knee, and otherwise "no acute displaced fractures or any other acute osseous abnormalities" and "[n]o abnormal soft tissue densities" in his left knee and ankle. (ECF No. 1, PageID.16); *see also Wirtz v. Buchanan*, No. 2:11-CV-1131, 2013 WL 372462, at \*7 (S.D. Ohio Jan. 30, 2013) (citing cases holding that "[a]nkles conditions similar to that of [plaintiff], where there is no evidence of fracture or dislocation, have frequently been found [] not to constitute serious

11

medical conditions"), *report and recommendation adopted*, No. 2:11-CV-1131, 2013 WL 3155775 (S.D. Ohio June 20, 2013).

Moreover, the record reflects a lack of outward symptoms during Sheehan's numerous examinations of Durden. Specifically, OCJ prisoner reports and medical notes show that, shortly before Sheehan examined Durden on the therapeutic restraint chair, Nurse Hooks first "medically evaluated" him and "cleared [him] of any injury." (ECF No. 22-3, PageID.113; ECF No. 22-2, PageID.109 (Therapeutic Restraint Flowsheet noting Nurse Hooks' exam of Durden on February 22, 2020 at 10:02 p.m.). Shortly thereafter, during the time Sheehan was responsible for Durden, she "medically evaluated" him ***seven times*** at half-hour intervals over the next three hours and, during each exam, "checked and assessed all of [Durden's] extremities (including both of his wrists and both ankles), extremity pulses, chest restraints, respiration rate, and range of motion of all of his extremities (including both wrists and both ankles)," and specifically examined his "ankles, moving them around in a circle, and checking his pedal pulses and sensation." (ECF No. 22-4, PageID.115-16; ECF No. 22-2, PageID.109 (Therapeutic Restraint Flowsheet documenting each of seven medical evaluations)). After each of those exams, Sheehan "cleared [Durden] of any injury" (ECF No. 22-3, PageID.113), concluding that her "***assessments of [Durden] were normal and his extremities, including his left ankle, functioned properly at the time of [her] assessments and he had no knee injury***" (ECF No. 22-4, PageID.116) (emphasis added). Finally, even upon examination *after* Sheehan's last exam, E.M.T. Jarema evaluated Durden "for [] therapeutic chair removal clearance" and similarly assessed "***no signs of swelling/deformity***" and "***no signs of trauma/injury***,"

12

he was "PMS (pulse, motor, sensation) positive," he "verbalized understanding" of sick call protocol, and he "has no further medical needs or complaints at this time." (ECF No. 22-2, PageID.107-08; ECF No. 22-4, PageID.116-17).[2] In short, Durden simply failed to show how Sheehan's care detailed above was "so grossly" incompetent or inadequate such that it would "shock the conscience." *Phillips*, 14 F.4th at 534-36.

Durden's arguments in his response brief – that (1) Sheehan could not have assessed his ankles by "moving them around in a circle" because it was a "physical impossibility being strapped to a restraining chair"; and (2) it was "also a physical impossibility" for her to "roll up my pants and make [a] determination" that he "had no knee injury" because "the straps were clearly over [his] clothes as seen in the video" – are of no utility to his surviving summary judgment. Even taken as true, those arguments work against him, as they concede that it was a "physical impossibility" for Sheehan to examine Durden any more thoroughly than she did based on the limits of the restraining chair.[3] More importantly, his

---

[2] Jarema's progress note reflects that Durden complained *to Jarema* that "his left ankle was broken and that he could not stand," and that she observed he was "moved from the chair" and had "an uneven gait due to refusing to stand" but "shows the ability to place weight on the left ankle." (ECF No. 22-2, PageID.107). But the record makes clear that, earlier when *Sheehan* was medically assessing Durden, he was confined to the restraining chair, so Sheehan could not have made similar observations related to his gait or ability to stand. Indeed, there is no evidence showing that he complained to *Sheehan* of any injuries during her exams. Finally, while his *complaint alleges* that his "knee was swollen and purple (literally)," he fails to provide *any proper evidence* supporting such allegations, as is required at the summary judgment stage. *Alexander*, 576 F.3d at 558.

[3] The same applies to Durden's argument that "[s]eeing that medical staff aren't even allowed to touch [him] during the time [he was] restrained, it's not to [his] su[r]prise no injury was reported seeing that the proper evaluation needed to reveal [his] injury could not be conducted." (ECF No. 24, PageID.134). Simply put, Durden cannot establish that *Sheehan* was deliberately indifferent in her examination where he himself argues that "the proper evaluation ... could not be conducted" due to prison policies concerning inmates in restraining chairs.

13

arguments are wholly unsupported by any *proper evidence*. *Alexander*, 576 F.3d at 558. While Durden contends that an alleged video recording of this incident "can and will [] prove[] ***at trial*** and show conclusively that [Sheehan] perjured herself" (ECF No. 24, PageID.133) (emphasis added), he has not submitted such video evidence ***at the summary judgment stage*** to support his unproven assertions. *See Tillotson v. Manitowoc Co., Inc.*, 727 F. App'x 164, 169 (6th Cir. 2018) ("At the summary judgment stage, the nonmovant is required [to] 'put up or shut up' on the critical issues of his asserted cause of action.") (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989); *see also Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) ("Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (quotations omitted). [4]

Second, even assuming that Durden could satisfy the objective component, his claim

---

[4] After briefing on Sheehan's motion for summary judgment was completed on March 24, 2022, Durden later filed on April 7, 2022, a document labeled "Declaration of facts to be added to the record." (ECF No. 28). In that document, he states "under the penalty of perjury" that there is "video evidence that will show me screaming out in pain over my knee and ankle in the [presence] of defendant who disregarded my outcry, instead of attempt to mitigate my circumstances therefore excessive and unnecessary pain and suffering ensued," and therefore "further discovery may be necessary" to obtain "this DVD evidence." (ECF No. 28, PageID.287-88). In response, Sheehan filed a motion to strike Durden's declaration (ECF No. 29), asserting that such declaration was improperly filed well beyond the discovery deadline and after full briefing on her summary judgment motion, in violation of the Court's Local Rules, and that, in any event, his "argument about what he allegedly *believes* additional evidence, or a video could show is not a new argument and has already been thoroughly briefed." (ECF No. 29, PageID.290-93). For the reasons already discussed above, Durden's assertions about what an alleged video depicts does not change the Court's analysis on Sheehan's motion for summary judgment because he has not actually submitted such video evidence. And, because the Court recommends granting summary judgment on Durden's claim, Sheehan's motion is now moot. Accordingly, the Court will issue a separate order denying Sheehan's motion **(ECF No. 29)** as moot.

would still be subject to summary judgment for failure to present evidence that would satisfy the subjective component. As to the subjective prong, Durden must show that the defendant possessed "a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles v. Corr. Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk by failing to take reasonable measures to abate it. Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment." *Broyles*, 478 F. App'x at 975 (internal quotations omitted). As the Sixth Circuit has recognized, these requirements are "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The *Comstock* court further explained:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted "for the very purpose of causing harm or with knowledge that harm will result." Instead, "deliberate indifference to a substantial risk of serious harm to a prison is the equivalent of recklessly disregarding that risk."

*Id.* (internal citations omitted).

Courts distinguish between "cases where the complaint alleges a complete denial of

medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Analyzed against these standards, Durden's deliberate indifference claims are subject to summary judgment because the record evidence, as detailed above, reflects that Sheehan medically examined Durden, including his left ankle and knee, seven times within a span of less than three hours and cleared him of any injury after assessing that his "extremities, including his left ankle, functioned properly at the time of [her] assessments and he had no knee injury." (ECF No. 22-4, PageID.115-16; ECF No. 22-2, PageID.109). Based on that assessment, she determined there was no need for any further medical treatment, much less an x-ray or additional pain medication, which she had already provided him concerning a separate complaint of pain earlier in the afternoon. (ECF No. 22-1, PageID.105-06; ECF No. 22-4, PageID.115, 118-19 ("Also, since I had just given [Durden] Motrin 600 mg. a little earlier on February 22, 2020 around 5:00 p.m., I would not have given him additional pain medication during the period beginning on February 22, 2020 at approximately 10:20 p.m. and ending on February 23, 2020 at approximately 2:00 a.m."). Sheehan's assessment is also consistent with those of the two medical providers who examined Durden shortly before and after Sheehan. Durden has wholly failed to present evidence that his claims concerning the adequacy of Sheehan's medical

treatment demonstrate more than "negligence or misdiagnosis of an ailment," which is insufficient to state an Eighth Amendment claim. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation."); *see also Estelle*, 429 U.S. at 106; *Farmer v. Brennan,* 511 U.S. 825, 835 (1994). Accordingly, Sheehan is entitled to summary judgment on Durden's claims against her.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Sheehan's Motion for Summary Judgment **(ECF No. 22)** be **GRANTED**.

Dated: July 29, 2022  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 29, 2022.

s/Marlena A. Williams
In the absence of EDDREY O. BUTTS
Case Manager
